# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 CR 381 - 1 | **DATE** | 12/18/2001 |
| **CASE TITLE** | United States of America vs. John T. Veysey, III | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for judgment of acquittal or for new trial (Doc. No. 100-1, 2) denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 5 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 19 2001 date docketed | 114 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | 01 DEC 18 PM 12:31 | 12/18/2001 date mailed notice | |
| ETV | courtroom deputy's initials | | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
DEC 19 2001

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 99 CR 381 |
| | ) | |
| JOHN T. VEYSEY, III | ) | Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

John Veysey was charged in a 21-count indictment with mail fraud, wire fraud, arson, and the use of fire to commit a federal felony. Three of the counts were dismissed prior to trial. On March 6, 2001, the jury returned a verdict of guilty on each of the remaining counts. Mr. Veysey moved for a new trial, but the court denied the motion orally in May 2001. On November 30, 2001, the court imposed a life sentence, restricted by the statutory maximum of 110 years. In this memorandum, the court addresses Mr. Veysey's post-trial arguments and objections to the probation officer's recommendations.

### Post Trial Motion

Defendant made three key arguments in his motion for a judgment of acquittal or for new trial: He challenges the sufficiency of the evidence, challenges the court's jurisdiction over the arson charge, and challenges several of the court's evidentiary rulings. The court addresses these arguments briefly.

1.  **Sufficiency of the Evidence**

A challenge to the sufficiency of the evidence is notoriously difficult to mount, because the court must review the evidence in the light most favorable to the verdict

1/4

and indulge all reasonable inferences in light of the jury's conclusions. *See, e.g. United States v. Sanchez*, 251 F.3d 598, 601 (7th Cir.2001); *United States v. Gardner*, 238 F.3d 878, 879 (7th Cir.2001). The Court of Appeals has cautioned that a jury's determination may be upset "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Phillips*, 239 F.3d 829, 842 (7th Cir.2001) (internal citations omitted).

The verdict in this case easily passes this generous test. The government's mail fraud evidence was extremely strong: Mr. Veysey made insurance applications and filed claims seeking recovery of amounts substantially in excess of the actual value of his lost property. For a most obvious example, he sought and recovered proceeds of allegedly "lost" jewelry, paintings and collectible sculptures that were later found in his possession. He billed his insurer for lodging expenses that he never incurred. He filed claims for thousands of dollars' worth of stuffed animals, doll clothing, and women's clothing items in a transparent effort to boost his unlawful recovery.

The evidence of Mr. Veysey's other crimes was arguably less straightforward, but equally compelling. Apart from his profits on three homes he purchased and rehabbed, Mr. Veysey has not been gainfully employed since 1993. Expert witnesses and occurrence witnesses called by the government presented evidence of the manner and method by which Mr. Veysey, who had already profited handsomely from an earlier house fire, was able to set fires to three more insured homes in such a fashion as to mask his wrongdoing and collect substantial proceeds. The government offered evidence that Mr. Veysey staged an "accident" involving an expensive vehicle, claiming

2

brake and steering flaws that defied corroboration.

Most chilling was the evidence that Defendant did not stop at the point of destroying property in return for insurance proceeds. Soon after boasting to co-workers that he is capable of killing without leaving any evidence, he apparently did just that: the evidence heard by the jury demonstrates that Mr. Veysey left his first wife dead in the family home while on an unprecedented errand to pick up her children from school. There was evidence that Mr. Veysey staged the murder scene, left decoy medications near the body, and expressed no surprise and little remorse when he returned to find his well-insured wife dead.

The notion that Mr. Veysey would scheme to benefit financially from the death of his family members was borne out by evidence that he set fire to a home in which his second wife and young son nearly died. He attempted to insure a later fiancé for $1 million. Just before his April 1999 arrest, Mr. Veysey deceived yet another fiancé, the motion of two young boys, about his plans to insure her life, and schemed to fake her death.

The counts on which the jury convicted Mr. Veysey included four counts of mail fraud and one of wire fraud (Counts 1 through 5) by way of fraudulent insurance claims relating to his first wife's death. He was convicted on six additional counts (Counts 9 through 13 and 16) of making fraudulent mailings relating to insurance claims on his burned home in Galena, Illinois. Three more counts (Counts 7, 8, and 15) relate to fraudulent mailings concerning insurance claims for the rented residence in Cary, Illinois where Mr. Veysey's second wife and son nearly died. Another count, Count 19,

3

charged arson related to that fire. Finally, the jury convicted Mr. Veysey on Count 20 on charges of using fire to commit mail fraud involving the arson in Galena. As outlined above, the evidence amply supports the verdict.

### 2. Jurisdiction over the Arson Charge

In his post-trial motions, Defendant argues again that the government did not prove a federal interest necessary to support a conviction of arson on Count 20. The court took the matter up in a pre-trial ruling on March 5, 2001, and Mr. Veysey has offered no new authority on the issue. The court incorporates its previous ruling, a copy of which is attached. Defendant's motion for a judgment of acquittal for lack of jurisdiction over this charge is denied.

### 3. Trial Errors

Finally, Defendant urges that he was denied a fair trial due to numerous errors. The court recognizes that most trials are not perfect. The Constitution does not guarantee a perfect trial, however -- only a fair one. *United States v. Harris*, 271 F.3d 690, 704 (7th Cir. 2001), citing *Michigan v. Tucker*, 417 U.S. 433 (1974). Having reviewed Mr. Veysey's list of assigned errors, the court concludes that to the extent it erred, the errors did not deprive him of a fair trial.

Defendant argues that the court erred in 12 ways. The court addressed several of these objections in written orders, copies of which are attached. First, the court denied Mr. Veysey's motion for severance of some of the counts. As described above, the indictment charges Mr. Veysey with a series of actions designed to defraud insurance companies by deliberately causing losses or by exaggerating or lying about

4

the nature or scope of the losses. The court believes the charges against Mr. Veysey were "of the same or similar character" or "based on two or more acts or transactions connected together" as required by Rule 8(a).

The court admitted evidence that Defendant ordered gamma hydroxy butyrate ("GHB") and possessed literature describing the uses and dangers of the drug, evidence probative of the government's claim that Mr. Veysey used GHB or a similar drug to render his second wife unconscious before setting fire on the Cary, Illinois home. For similar reasons, the court ultimately permitted the jury to hear Cindy Richards describe Mr. Veysey's use of substances that could render a person unconscious, and allowed the testimony of two other witnesses who heard Mr. Veysey describe his ability to kill someone without being detected. Further, the court allowed the government to demonstrate that Mr. Veysey met women through personal ads in the newspapers; he does not challenge the factual accuracy of this evidence, and the court does not agree that evidence that an individual places a personal advertisement is unduly prejudicial.

The court permitted Diane Carter's testimony regarding his failed attempt to sell one of his properties just before that fire occurred, evidence that supported the government's contention that Mr. Veysey needed money at the time. Similarly, the court admitted evidence of bank loan applications, insurance applications and Social Security applications not as evidence of other false statements made by Veysey, but to demonstrate his actual financial condition at the time of his false insurance claims and his need for cash at the time of the suspicious fires and accidents.

Defendant believes it was error for the government's forensic pathologist, Dr.

5

Kirschner, to testify that in his opinion the scene of Mr. Veysey's first wife's death was staged. The court does not agree that such an opinion is outside the expertise of a forensic pathologist. Further, Mr. Veysey's attorneys had ample opportunity to cross-examine the witness on this issue and called their own expert witness to rebut it.

Defendant challenges the prosecutors' opening statement and closing argument. With respect to the opening, Defendant argues that permitting the government's lawyers to use icons in charts as part of their opening was error. The court believes, however, that the icons were appropriate as memory prompts for the jury as the prosecutor described events he expected the evidence would reflect. That the fires occurred when they did is not a matter of dispute. In any event, the court in fact sustained the objection to some of the icons as too suggestive and required the government to conceal some of the images. What remained for the jury to see did not prejudice the defense, in this court's view. With respect to the closing argument, Mr. Veysey argues that the prosecutor misrepresented the evidence when she described the placement of the victim's hands and fingers at the time she was discovered. If counsel's statement was in fact inaccurate, there was no prejudice; the court cautioned the jury that the lawyers' statements were not evidence and should be disregarded to the extent those statements conflicted with the jurors' memories.

Perhaps most significantly, Mr. Veysey challenges the court's decision to permit the government to call an actuarial expert concerning the probabilities of multiple accidental fires. The court addressed this matter in a pretrial ruling on October 24, 2000, and incorporates that ruling, a copy of which is attached.

6

**Sentencing**

Defendant Veysey was charged and convicted of mail and wire fraud. The United States Sentencing Guidelines recognize that mail or wire fraud statutes are broad laws that are used "primarily as jurisdictional bases for the prosecution of other offenses." For this reason, when the indictment establishes an offense "more aptly covered by another guideline," the court is permitted to apply that guideline rather than the guideline for fraud. *See* U.S.S.G. § 2F1.1, comment (note 14) (2000). The Probation Officer recommended use of the homicide guideline, § 2A2.1, in this case. The Sentencing Guidelines have been amended since issuance of the Probation Officer's report, but the new version also expressly permits the court to proceed under another guideline under circumstances such as those presented here. U.S.S.G. § 2B1.1(c)(3) and comment (note 11) (2001). The court agrees that the homicide guideline is appropriate here, as explained below.

Counts 1 through 5 charged Defendant with fraudulent mailings in connection with the death of his first wife. For example, Count 1 alleged that Defendant obtained a life insurance policy on his wife, naming himself as beneficiary, and "caused the death of Patricia Veysey, and then filed a fraudulent insurance claim, concealing his role in causing her death." It alleged, further, that "on or about May 15, 1995, defendant intentionally caused the sudden death of his first wife, Patricia Veysey, . . . ." The jury found beyond a reasonable doubt that Defendant caused mailings that furthered or attempted to further the scheme. (*See* Government Instruction No. 23; 18 U.S.C. §§ 1341, 1343.) For example, they returned a verdict of guilty on Count Two,

7

which alleged the mailing of "documents pertaining to defendant's claim against Allstate Life Insurance Company in connection with the death of his first wife, Patricia Veysey." Such mailing would not have been unlawful had Mr. Veysey not played a role in bringing about his wife's death. At sentencing, Defendant argued with this conclusion, suggesting that the jury could have found him guilty of defrauding Allstate by concealing from Allstate the fact that his wife suffered from a heart condition at the time she applied for insurance coverage. There was no evidence that either Defendant or his wife were aware of any pre-existing medical conditions at the time of the insurance application, however. From the opening statement and throughout the trial, the prosecutors were specific about their contention that, although the means were uncertain, Veysey himself brought about his wife's death, and that this was the circumstance that rendered his mailings fraudulent. Use of the homicide guideline, U.S.S.G. § 2A1.1, is appropriate here.

Defendant has objected to use of the homicide guideline, citing *Apprendi v. New Jersey*, 530 U.S. 460 (2000). In that case, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Defendant argues that the jury did not specifically find that he knowingly caused his wife's death, and that use of the homicide guideline is inappropriate because it would increase the sentence for his fraud conduct from five years to life. The court does not believe the rule of *Apprendi* is implicated here, because use of the homicide guideline does not increase his penalty beyond the statutory maximum. The maximum term of

8

imprisonment on Counts 1 through 13 and 15 through 17 is five years each, for a subtotal of 80 years, pursuant to 18 U.S.C. §§ 1341 and 1343. Count 19 is an arson charge involving the fire at the residence in Cary, Illinois. That charge carries a maximum term of twenty years, pursuant to 18 U.S.C. § 844(i). Finally, Count 20, which charges Defendant with using fire to commit a federal felony, carries a mandatory ten-year term, pursuant to 18 U.S.C. § 844(h). The maximum term of imprisonment is 110 years.

Under the Guideline for first degree murder, U.S.S.G. § 2A1.1(a), the base offense level is 43, and the guideline sentence is life, capped by the statutory maximum sentence on all charges. Guideline § 5G1.2(d) teaches that where the sentence imposed on the count carrying the highest statutory maximum (in this case, 20 years) is less than the total punishment (in this case, the guideline life term), the sentence imposed on the other counts shall run consecutively to the extent necessary to produce a combined sentence equal to the total punishment. Because 20 years is less than a life term, the court imposes a sentence of 110 years.

ENTER:

Dated: December 18, 2001

REBECCA R. PALLMEYER
United States District Judge